FREDERICK CRANE, Respondent, v. CHASE ANDREWS et al., Defendants, and HAROLD G. VILLARD et al., Appellants.

### Real property — action to impress trust.

Plaintiff under peculiar circumstances brought this action to impress a trust and lien on certain property originally conveyed to a person claimed by him to be acting as trustee and recovered judgment accordingly.  It was agreed and represented by certain parties to the transactions that the person so named would take such conveyance as trustee. There was, however, nothing in the deeds and no extrinsic evidence binding on him showing that he did in fact accept the transfers as such. *Held*, that to whatever other relief plaintiff might be entitled, he could not maintain his action on the theory adopted.

*Crane* v. *Andrews*, 133 App. Div. 349, reversed.

(Argued June 15, 1910; decided October 11, 1910.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered

June 15, 1909, affirming a judgment in favor of plaintiff
entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material,
are stated in the opinion.

*William B. Hornblower* and *William M. Wherry, Jr.,* for
appellants. The evidence conclusively establishes that the
contract was never performed by Crane, and that any con-
veyances that were made of any portion of the property were
not made in pursuance of its provisions, but in pursuance of
an entirely new arrangement. (*Schaefer* v. *Henkel,* 75 N. Y.
378; *Briggs* v. *Partridge,* 64 N. Y. 357; *Henricus* v. *Eng-
lert,* 137 N. Y. 488; *Davis* v. *Lottich,* 46 N. Y. 393; *Evans-
ville* v. *E. G. L. Co.,* 26 Ind. 447.) The conclusions of law
that there was a waiver of the conveyance of the omitted
tract of land were erroneous. (*Spence* v. *Ham,* 163 N. Y.
220; *Norton* v. *U. S., etc., Co.,* 89 App. Div. 237; *Ketchum*
v. *Herrington,* 45 N. Y. S. R. 59; *Oberlies* v. *Bullinger,* 75
Hun, 248; *Purdy* v. *R. R. Co.,* 125 N. Y. 209; *Seybolt* v.
*R. R. Co.,* 95 N. Y. 562; *Vanderbilt* v. *Schreyer,* 91 N. Y.
392; *Bronner* v. *Walter,* 15 App. Div. 295; *Cosgray* v.
*Piano Co.,* 10 App. Div. 351; *Everson* v. *Hefferman,* 59
App. Div. 533; *Zinsser* v. *Cub Co.,* 66 App. Div. 514;
*Arnold* v. *Scharbauer,* 118 Fed. Rep. 1008; *Cavanaugh* v.
*Casselman,* 88 Cal. 543.) Specific performance of the agree-
ment in this case should have been refused because the agree-
ment sued on was so incomplete that it did not constitute a
contract. (*Booth* v. *Milliken,* 127 App. Div. 522; 194 N. Y.
553; *U. P. Co.* v. *N. Y. P. Co.,* 164 N. Y. 406; *Stokes* v.
*Stokes,* 148 N. Y. 708; *Crossdale* v. *Lanigan,* 129 N. Y. 604;
*Geer* v. *Clark,* 83 App. Div. 292; *Lighthouse* v. *Bank,* 162
N. Y. 336; *Foot* v. *Webb,* 59 Barb. 38; *Buckmaster* v.
*Thompson,* 36 N. Y. 557; *Stevenson* v. *Buxton,* 15 Abb. Pr.
352; *Pratt* v. *Clark,* 49 Misc. Rep. 146; *Parkhurst* v. *Van
Cortlandt,* 1 Johns. Ch. 273.) Specific performance of the
agreement should have been refused because it lacks mutu-
ality. (*Mahanny* v. *Carr,* 175 N. Y. 454; *Ide* v. *Brown,*

178 N. Y. 26; *Norris* v. *Fox*, 45 Fed. Rep. 406; *Wadick* v. *Mace*, 191 N. Y. 1; *Levin* v. *Dietz*, 194 N. Y. 376.)

*William Douglas Moore* and *Graham Witschief* for respondent. Plaintiff's contract is clear and unequivocal and based upon ample consideration. (*McKenzie* v. *Harrison*, 120 N. Y. 260; *McCreery* v. *Day*, 119 N. Y. 1; *Davis* v. *Bingham*, 39 Misc. Rep. 299.) Eaton and Ulbricht were trustees under the contract. (*Downing* v. *Marshall*, 23 N. Y. 379; 1 Lewin on Trusts, 162; *Morris* v. *Whitcher*, 20 N. Y. 41; *Dickinson* v. *Vance*, 31 App. Div. 464.) The relief granted is equitable. (*Davis* v. *Lottich*, 46 N. Y. 393.) The contract was never abandoned, abrogated or rescinded. (*Avery* v. *Wilson*, 81 N. Y. 344.)

HISCOCK, J. This action was brought for the purpose of establishing in behalf of respondent a lien on or interest in certain ore and timber lands now held by the appellant Hudson Iron Company, whereby he should have the right to remove timber and ore and collect royalties on such products removed by others until he had obtained satisfaction of an indebtedness for upwards of $90,000 and interest against another iron company. The suit is based on a written agreement made between him and one Andrews purporting to secure such rights, and of which agreement the trial court found that the appellants had notice. The alleged consideration for the grant to respondent of this lien or interest was that he was to have credit for the procurement by another person of conveyances of the premises in question to the trustee named in said agreement, through whom they were subsequently to be conveyed to other parties subject to his rights, and the judgment is based on the express theory and finding that one Eaton accepted the conveyances as trustee in part for the benefit of respondent and to carry out said agreement and that his subsequent conveyance through an intermediate party to the appellant iron company was in violation of his trust.

The agreement between respondent and Andrews is loosely drawn and indefinite in many respects, and the evidence on the

trial is more or less characterized by the same features, so that it has been difficult to get hold of the real relationship between the various parties and of their true purpose and to determine whether the evidence does sustain the construction and findings adopted and made by the trial justice, for that is the troublesome question in the case. After proper consideration I have reached the conclusion that it does not; that there is no evidence to establish that Eaton accepted the conveyances as trustee under or for the purpose of carrying out respondent's agreement and that his subsequent grantees did not take the lands charged with such a trust or interest in favor of respondent. The discussion of that question necessarily involves a review at considerable length of the evidence.

Prior to May 16, 1904, respondent and the defendants Andrews, Clark and Villard had become involved in the management of an unsuccessful iron company known as the Eastern Iron Company of New York and the Eastern Iron Company of New Jersey. Respondent appears to have been an actual *bona fide* creditor of the companies to the extent of $94,632.55. Andrews was a director and president of both corporations and Villard was a stockholder in the New York company and also an apparent creditor thereof to the amount of $42,470.45. At about this time apparently some of the interested parties commenced to consider the possibility of a reorganized or new company which by the acquisition of additional ore lands might become enabled successfully to manufacture iron. In accordance with these plans they established some sort of relations with one Mershon who promised the ability to obtain options on three tracts of undeveloped or abandoned ore lands which would serve the desired purpose. For alleged sentimental reasons Mershon desired to give to respondent, who, as stated, does occupy a meritorious position as creditor, the benefit of these options, and to make them the basis of some sort of an arrangement which would secure to him payment of his aforesaid indebtedness, and on the date mentioned the agreement already referred to, which is the basis of this action, was

made.  In substance, and so far as material, it provided that
respondent should " assign and deliver, or cause to be assigned
and delivered, to James M. Clark, or some other third party
to be mutually agreed upon as Trustee, the several options to
be received and controlled by him " upon three tracts of land
already referred to.   These tracts, however, were to be subject
to his right to remove timber and ore and other metals, and
subject to a royalty on ore which might be removed, all to
secure the payment of his indebtedness above mentioned, and
it was further agreed that said rights and privileges " be rep-
resented and further secured by a proper agreement or evi-
dence thereof to be issued, made and delivered to the second
party (said Crane)    *    *    *    by the said trustee or by any
corporation to be hereafter organized for the purpose, among
other things, of working said lands."   Andrews agreed, on
presentation and delivery of proper deeds to said tracts of
land, to pay " on account of the purchase price thereof " the
sum of $34,500 and certain expenses, etc.   He also agreed to
pay to Crane the sum of $10,000 to be applied in part pay-
ment of his indebtedness " upon the delivery of said options
as aforesaid, or within thirty days thereafter, upon satisfactory
assurance of prompt payment to the second party."   Said
agreement likewise provided for payment in substantially
similar manner to Villard of the indebtedness due to him
from the Eastern Iron Company before mentioned, and while
Mr. Villard was not in any manner a party to the agreement
he was fully advised of its execution and terms.

At the time this agreement was made Mershon had no
options on any of the property which in accordance with his
plan to benefit the respondent he could turn in in fulfillment
of his agreement, but subsequently and prior to June 30,
1904, he had reached a point where he could deliver deeds of
two of the parcels.

In the meantime and on or about June 4, 1904, the appel-
lant Hudson Iron Company had been incorporated with the
defendant Andrews as a director and president and Villard as
a director and vice-president, and prior to the delivery of the

deeds which Mershon had obtained as aforesaid, the request was made by Andrews and Clark speaking for themselves and as claimed at the request of Villard, that one Eaton, who was an employee of the latter, should be substituted as trustee for Clark under the agreement already referred to, Clark being an officer of the new company. Respondent consented to this substitution and subsequently Mershon secured delivery of the deeds transferring to Eaton two out of the three proposed parcels, the other parcel mentioned in the original agreement having been dropped out for some reason. Subsequently Eaton conveyed the premises without consideration to one Ulbricht, a representative of the Villard estate, and he subsequently executed conveyances to the Hudson Iron Company which made a large issue of stock and bonds against these and some other properties of uncertain value and a large proportion of which were issued or transferred to the appellant Villard, apparently making him a large profit in addition to paying the indebtedness mentioned in the original agreement between respondent and Andrews and the moneys advanced on execution of the deeds to Eaton. As has been stated, the respondent claims and the court has found that these conveyances were accepted and the lands held by Eaton as a substituted trustee under the agreement which has been referred to. The appellants claim in opposition to this theory that the conveyances were not procured under the original agreement at all; but that Villard, who unquestionably did advance moneys to secure the execution of the deeds to Eaton, did so for his own benefit and that the latter took the conveyances as the former's individual representative and agent and entirely independent of respondent's agreement with Andrews and the rights therein secured.

Whether that may be of controlling importance or not, it is difficult to see how Mr. Villard can be bound by or made subject to the written agreement referred to. He was not in any manner a party thereto and I cannot find any evidence which fairly establishes that he acted under its terms and provisions in doing whatever he did do to secure the execution of the

conveyances to Eaton however respondent and Mershon may have been misled into the belief that he was thus acting. According to Mershon's testimony, which although disputed the trial justice had a right to believe, Andrews quoted Villard as desiring that Eaton should be substituted as a trustee in the place of Clark under the agreement, but there is no proof binding on Villard that he ever did make such a request and so far as respondent was able to give evidence of his acts they were in repudiation of rather than in accordance with the agreement. At some time before the conveyance, whatever his earlier attitude may have been, he seems to have reached the conclusion that he would prefer to secure control of these properties independent of the agreement which secured re payment of respondent's debt and thus be enabled, as he subsequently did, to deal with the iron company at a profit to himself unhampered by respondent's equitable claims.

But however the case may lie as to Villard, there is absolutely no evidence to show that Eaton, as found by the court, ever accepted the conveyance as trustee under respondent's agreement with Andrews and for the purpose of carrying out the provisions in respondent's favor therein contained. The deeds to him on their face did not purport to be in trust or otherwise than as ordinary conveyances to him individually and there is no testimony in support of respondent's theory and of the findings of the court that he ever agreed to act as trustee under the written agreement or that he ever knew about it. On the contrary, the only evidence on that general subject is that Villard asked him to take the conveyances as his representative and agent. Under these circumstances, however respondent and Mershon may have been misled into the idea that Eaton had been properly advised with by Andrews or Villard and that he was acting as substituted trustee in place of the original one named in the agreement and was accepting the conveyances under the terms of the latter, the evidence utterly fails to establish those facts, and it follows that not having accepted the conveyances under any trust obligation to respondent, none were violated by the subsequent con-

veyances to the appellant iron company. At least, to whatever relief the respondent may be entitled on some other theory he is not entitled to a judgment on the theory adopted by the trial court of a trust accepted and then violated.

The trial court has not found that the appellant iron company caused or procured the execution of the conveyances to Eaton by agreeing that he should receive them as a trustee under the respondent's agreement. It is, therefore, unnecessary to consider whether the evidence would have justified such a finding and whether the effect of such a finding if made would have been to estop the iron company when it became the owner of the lands from denying that they were conveyed to Eaton as such trustee and that in its hands they were subject to a trust in respondent's favor.

Many other reasons have been urged by the learned counsel for the appellants why this judgment should not be affirmed. I think that some of them are clearly untenable, and in view of the conclusion reached on the point discussed and of the possibility that more complete and satisfactory evidence may be produced on another trial, it does not seem desirable to occupy space in discussing other questions which have been or may be raised.

In accordance with these views the judgment must be reversed and a new trial granted, with costs to abide event.

Cullen, Ch. J., Gray, Haight, Vann, Willard Bartlett and Chase, JJ., concur.

Judgment reversed, etc.